IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
FRONTIER COMMUNICATIONS, :
OF NEW YORK, INC. :
        Plaintiff, :
         :
v. : Civil Action No. 07-CV-10327
         :
INTERNATIONAL BROTHERHOOD OF : (Lynch, J.)
ELECTRICAL WORKERS, AFl-CIO, : (Eaton, M.J.)
LOCAL UNION 503, :
         :
        Defendant. :
-------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
<u>PURSUANT TO RULE 12(b)(6)</u>**

        Wendy C. Butler
        Jones Day
        222 E. 41st Street
        New York, NY 10017
        212.326.3939 (telephone)
        212.755.7306 (facsimile)

        Thomas M. Beck
        Tonya M. Osborne
        Jones Day
        51 Louisiana Avenue, N.W.
        Washington, D.C. 20001
        202-879-3939 (telephone)
        202-626-1700 (facsimile
        Attorneys for Plaintiff Frontier Communications
        of New York, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

PRELIMINARY STATEMENT ..........................................................................1

STANDARD OF REVIEW ..................................................................................2

ARGUMENT ........................................................................................................3

    A.    The Great Weight of Authority Requires The Union To Obtain Retirees' Consent Before Proceeding to Arbitration ..............................................3

    B.    Local 503 Is Not The Retirees' Legal Representative ...............................6

        1.    Retirees are not "employees" under the terms of the CBA or the law......................................................................................................6

        2.    The interests of retirees and active employees are different and, unlike active employees, retirees have an independent right to pursue their individual claims directly with their former employer.........8

CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**U.S. SUPREME COURT CASES**                                                                 **Pages**

Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,
    404 U.S. 157 (1971) ...................................................................................8, 9, 10

Bell Atlantic Corp. v. Twombly,
    --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..............................................3

United Mine Workers of Am. Health & Retirement Funds v. Robinson,
    455 U.S. 562 (1982) ...............................................................................................10

**U.S. CIRCUIT COURT OF APPEALS CASES**

Anderson v. Alpha Portland Indus.,
    752 F.2d 1293 (8th Cir. 1985) ................................................................................11

Cleveland Elec. Illuminating Co. v. Utility Workers Union,
    440 F.3d 809 (6th Cir. 2006) ................................................................................4, 6

Int'l Assn. Machinists & Aerospace Workers v. Goodrich Corp.,
    410 F.3d 204 (5th Cir. 2005) ....................................................................................4

Local 134, UAW v. Yard-Man,
    716 F.2d 1476 (6th Cir. 1983) ..........................................................................10, 11

Meza v. Gen. Battery Corp.,
    908 F.2d 1262 (5th Cir. 1990) ........................................................................4, 7, 10

Rosetto v. Pabst Brewing Co.,
    128 F.3d 538 (7th Cir. 1998) ......................................................................4, 6, 9, 10

Schweizer Aircraft Corp.,
    29 F.3d 83 (2nd Cir. 1994) ........................................................................................4

United Food & Comm. Workers Int'l Union v. Alpha Beta Co.,
    736 F.2d 1371 (9th Cir. 1984) ..................................................................................5

United Steelworkers v. Canron, Inc.,
    580 F.2d 77 (3rd Cir. 1978) ......................................................................................5

**U.S. DISTRICT COURT CASES**

Druyan v. Jagger,
      508 F.Supp.2d 228 (S.D.N.Y. 2007) ……………………………………………..3

IBEW Local 1245 v. Citizens Telecommunications Co. of CA d/b/a Frontier Communications,
      2006 U.S.Dist. LEXIS 31157 (E.D. Ca.) ………………………………………….5

Plaintiff Frontier Communications of New York, Inc. ("Frontier" or the "Company") respectfully submits this memorandum of law in opposition to Defendant International Brotherhood of Electrical Workers, AFL-CIO, Local Union 503's ("Local 503" or the "Union") motion to dismiss Frontier's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## I.  PRELIMINARY STATEMENT

In this case, Frontier seeks a declaratory judgment that Local 503 lacks standing to compel arbitration of a grievance it purports to have filed on behalf of retirees without first obtaining the retirees' explicit consent to represent them. Frontier also seeks injunctive relief to prevent Local 503 from pursuing arbitration about retirees' medical benefits without the explicit consent of the retirees.

The Second Circuit has stated that it is "doubtful" that a union has standing to represent retirees. The majority of federal courts that have addressed the issue have held that a union must obtain the consent of retirees before seeking to represent them. The consent requirement is grounded in prudential policies recognizing that the interests of retirees and active employees are different; that, because retirees are not union members, they have the independent right to pursue their own individual claims directly against their former employer; and that permitting a union to represent retirees without their explicit consent may result in retirees losing these individual rights, as well as duplicative litigation and inconsistent results.

---

[1] Among other things, Local 503 argues in its motion to dismiss that Frontier is not entitled to a preliminary injunction. Because Frontier is seeking a permanent rather than a preliminary injunction, it does not address here the Union's analysis of the criteria necessary for preliminary injunctive relief. By explaining the Union's lack of standing to represent retirees without their explicit consent, Frontier establishes that it is entitled to the declaratory and injunctive relief that it seeks.

- 1 -

In an effort to sidestep the fact that the bulk of authority requires a union to obtain retirees' consent before proceeding to arbitration, the Union has raised the novel—and facially erroneous—argument that retirees are "employees" under the Collective Bargaining Agreement ("CBA") and that the Union therefore "is the bargaining representative of retirees." See Def.'s Mot. To Dismiss at 5. To substantiate its argument, the Union grossly mischaracterizes the CBA, relying on scattered sections describing the various categories of employees included in the bargaining unit instead of the CBA provision that actually defines the scope of the Union's representational authority.[2] This provision empowers the Union only to represent "employees in the unit" and specifically limits the bargaining unit to individuals who are "employed."

It is axiomatic that a person who is retired is not "employed" and cannot be a included in the bargaining unit. Indeed, the Supreme Court has specifically held that retirees are not employees for purposes of collective bargaining, and that they are not, and cannot be, considered members of the bargaining unit. Further, the weight of authority holds that retirees are entitled to pursue their individual rights under a CBA directly with their former employer, and that a union may not pursue claims on behalf of retirees without obtaining their explicit consent.

## II.  STANDARD OF REVIEW

The standard of review on a Rule 12(b)(6) motion to dismiss "is heavily weighted in favor of the plaintiff." Druyan v. Jagger, 508 F.Supp.2d 228, 235 (S.D.N.Y. 2007). Indeed, a motion to dismiss may be granted only if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct.

---

[2] The CBA technically covers two separate bargaining units: plant employees and clerical employees. See CBA, Article 3.1, p. 2. The fact that the CBA covers two units, and the differences between the units is irrelevant for purposes of the Union's motion to dismiss. Therefore, for simplicity's sake, the units will be collectively referred to as a single bargaining unit in this memorandum if law.

1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added). Because Frontier states a plausible claim that the Union lacks standing to compel arbitration of a grievance on behalf of retirees without obtaining their explicit consent, the Union's motion to dismiss must be denied.

### III.   ARGUMENT

#### A.   The Great Weight of Authority Requires The Union To Obtain Retirees' Consent Before Proceeding to Arbitration

While the Second Circuit has not squarely decided the issue, it has expressed doubts that a union has standing to represent retirees. See Schweizer Aircraft Corp., 29 F.3d 83, 87 (2nd Cir. 1994) ("[W]e are doubtful that the Union has standing under the CBA to assert the rights of individual retirees in a dispute with a former employer....").

The majority of federal courts that have considered the issue have required unions to obtain retirees' consent before seeking to arbitrate claims on their behalf. See, e.g., Cleveland Elec. Illuminating Co. v. Utility Workers Union, 440 F.3d 809, 817-18 (6th Cir. 2006) (holding that, because retirees have statutory rights and other claims related to retiree benefits, a union must obtain their assent before purporting to represent them at arbitration); Int'l Assn. Machinists & Aerospace Workers v. Goodrich Corp., 410 F.3d 204, 206 (5th Cir. 2005) (basing determination that union had standing to represent retirees, in part, on union's filing of "representation authorization forms" and emphasizing that the Fifth Circuit has never held that a union may sue on behalf of a retiree who has not consented); See also Rosetto v. Pabst Brewing Co., 128 F.3d 538, 540-41 (7th Cir. 1998) (holding retiree consent is required). A consent requirement not only protects retirees from the prospect of claim preclusion, see, e.g., Rosetto, 128 F.3d at 540 (expressing concern that if the union "loses in arbitration, the retirees lose,

period"), but also protects employers from the prospect of successive redundant claims by unions and retirees. See, e.g., Meza v. Gen. Battery Corp., 908 F.2d 1262, 1270-72 (5th Cir. 1990).

Local 503 attempts to distinguish these cases by focusing on unique facts unrelated to their core reasoning. For example, the Union emphasizes that Rosetto involved a union's pursuit of claims related to an expired collective bargaining agreement. See Def.'s Mot. to Dismiss at 10-11. However, the parties in Rosetto did not argue that the expiration of the collective bargaining agreement affected the issue on appeal, and the Seventh Circuit did not expressly or implicitly rely upon the agreement's expiration in reaching the result. See Rosetto, 128 F.3d at 539-41.

Instead, the Union urges the Court to consider "analogous caselaw from Circuits holding that retiree consent is not required and unions have standing to enforce their collective bargaining agreements," citing United Steelworkers v. Canron, Inc., 580 F.2d 77, 81-82 (3rd Cir. 1978), IBEW Local 1245 v. Citizens Telecommunications Co. of CA d/b/a Frontier Communications, 2006 U.S.Dist. LEXIS 31157 (E.D. Ca.), and United Food & Comm. Workers Int'l Union v. Alpha Beta Co., 736 F.2d 1371 (9th Cir. 1984). See Def.'s Mot. to Dismiss at 9. The Union similarly mischaracterizes these authorities. Canron does hold that a union has standing to arbitrate claims concerning retiree benefits, but it does not address whether the union must obtain consent from retirees before seeking to represent them. See Canron, 580 F.2d at 80-81. Alpha Beta addressed the arbitrability of the underlying grievance, not the standing question that is presented here. See Alpha Beta, 736 F.2d at 1374. These cases are inapposite, and they do not discuss whether retiree consent is necessary. The court in Local 1245 did find that the union was not required to obtain retiree consent, based, in part, on its determination that a

consent requirement would be inconsistent with Alpha Beta. This is the only case cited by Local 503 that provides any direct support for its position, and, as the Union acknowledges, the case is currently on appeal to the Ninth Circuit.

Apparently recognizing that sound reasons of law and policy refute its claim that it has standing to represent retirees without obtaining their consent, Local 503 gives short shrift to this initial question and instead addresses the majority of its argument to the arbitrability of grievances related to changes in retiree medical benefits and Frontier's entitlement to a declaratory judgment. The Union's emphasis on the underlying arbitrability of the disputed grievance is a red herring. This case is not about the arbitrability of the underlying grievance. This case is about whether the Union has standing to arbitrate this admittedly arbitrable grievance on behalf of retirees without obtaining their explicit consent.

The Union seeks here to represent the legal interests of retirees, who (1) are not members of the Union; (2) have not consented to be represented by the Union; and (3) could pursue their own claims. Most courts to address such a situation have concluded that, in these circumstances, the union lacks standing to proceed. See Cleveland Elec. Illuminating Co., 440 F.3d at 817-18; Rossetto, 128 F.3d at 540-41. The same courts have concluded that the union may gain standing merely by obtaining explicit consent from the retirees to represent them. See Cleveland Elec. Illuminating Co., 440 F.3d at 818; Rossetto, 128 F.3d at 541. If, as the Union purports, it is indeed pursuing this grievance on behalf of retirees, let it demonstrate that the retirees have assented to be represented.

Finally, contrary to Local 503's assertion, requiring the Union to obtain the retirees' explicit consent would not undermine federal labor policy. As the Union correctly observes, the

purposes and objectives underlying this policy are "to conserve the parties' time and resources." See Def.'s Mot. to Dismiss at 14. However, these circumstances present the unusual situation where arbitration is not necessarily more efficient than litigation, because allowing Local 503 to proceed without the retirees' consent leaves the door open for duplicative lawsuits and inconsistent outcomes. See Meza v. General Battery Corp., 908 F.2d at 1270-72. Thus, the Court's adoption of a consent requirement would actually promote judicial efficiency.

### B. Local 503 Is Not The Retirees' Legal Representative

In an effort to avoid the standing question altogether, Local 503 raises the novel argument that retirees are "employees" within the meaning of the CBA, and that the Union is their legal representative. The Union carefully avoids labeling itself as the retirees' "exclusive bargaining representative." Rather, it consistently refers to itself merely as "the bargaining representative of retirees." See Def.'s Mot. To Dismiss at 5. Nonetheless, the clear implication of Local 503's assertions that (1) retirees are employees; and (2) the Union is the exclusive bargaining representative of employees under the CBA, is that it is attempting to argue that it is the retirees' exclusive bargaining representative. This syllogism is contradicted by the plain language of the CBA and by the bulk of legal authority holding that retirees are not employees and that they have an independent right to pursue their individual claims directly with their former employer.

### 1. Retirees are not "employees" under the terms of the CBA or the law.

The CBA clearly limits the Union's representational authority to active employees who are members of the bargaining unit. Article 3 of the CBA (entitled "Union Recognition") defines the scope of the Union's representational authority. Section 3.1 of Article 3 expressly limits the

bargaining unit to employees that are "employed by the employer." See CBA, Article 3.1, p. 2-3. The use of the adjective "employed," which means "having a job" or "working," belies any intent by the parties to include retirees in the bargaining unit. Section 3.2 of Article 3 further states that the term "employee" as used in the CBA "shall mean employees governed by this Agreement and for whom the Union is the recognized collective bargaining representative," which confirms that the term "employee" only includes members of the bargaining unit. See CBA, Article 3.2, p. 3. The Supreme Court has specifically held that retirees, "whose work has ceased with no expectation of return," are not "employees 'working' or 'who work'" and cannot be "'employees' included in the bargaining unit." See Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co., 404 U.S. 157, 172 (1971). Thus, retirees are not "employees" within the meaning of the CBA or under accepted precepts of federal labor law.

   The Union's argument that other provisions of the CBA establish that retirees are "employees" is unavailing. The Union selectively relies upon Section 5.1(a) of Article 5, which states in relevant part that a "'regular employee' is a person whose employment is reasonably expected to be permanent at the time they are engaged." See Def.'s Mot. To Dismiss at 5. However, the remainder of Section 5.1 goes on to explain that an employee is someone who works. Section 5.1(b) of Article 5 defines a "regular full-time employee" as "one who is engaged to work the equivalent of five (5) full-time tours in a calendar week." See CBA, Article 5.1(b), p. 5. Similarly, Section 5.1(c) of Article 5 defines a clerical "regular part-time employee" as "one who is normally scheduled to work less than the equivalent of five (5) full-time tours in a calendar week…." See CBA, Article 5.1(c), p. 5. The fact that these more refined definitions of the various types of "regular employee" are tied to being "engaged to work" or "normally

scheduled to work" refutes the Union's claim that the broader "regular employee" definition includes retirees.

In addition, the mere fact that certain provisions of Article 28 of the CBA (entitled "Pension Insurance") refer to the "retirement plan," see CBA, Article 28.1, p. 50, and an "employee who retires" and/or "retirees," see CBA, Article 28.3, p. 51, is insufficient to rebut the plain language of Article 3 limiting the scope of the bargaining unit and the term "employee" to someone who "is employed." Indeed, if, as the Union suggests, the parties intended for the term "employee" to include retirees, there would be no need for the CBA to specifically refer to "retirees" instead of using the more generic "employees." The clear import of the parties' selective use of the term "retirees" is that the parties mutually understood that retirees are different from employees.

>    2.   The interests of retirees and active employees are different and, unlike active employees, retirees have an independent right to pursue their individual claims directly with their former employer.

As noted above, the Supreme Court has specifically held that retirees are not "employees" and that they cannot be members of the bargaining unit represented by a union. See Allied Chemical, 404 U.S. at 172. See also Rosetto, 128 F.3d at 540 (relying on Allied Chemical to support the conclusion that a union was not the exclusive bargaining representative of a class of retirees). The rationale the Supreme Court articulated in Allied Chemical provides important lessons for purposes of resolving the Union's motion to dismiss, as well as the ultimate question to be decided in this case. Paramount among these lessons is that retirees and active employees do not have a common interest in retiree medical benefits. Indeed, in reaching the conclusion that a bargaining unit of retirees and active employees would be inappropriate, the

Supreme Court explicitly reasoned that the interests of these groups are not sufficiently similar. The Court explained:

> [E]ven if, as the [National Labor Relations] Board found, <u>active and retired employees</u> have a common concern in assuring that the latter's benefits remain adequate, they <u>plainly do not share a community of interests broad enough to justify inclusion of the retirees in the bargaining unit</u>. Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Inclusion of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, <u>the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits</u>.

Id. at 173 (emphasis added). See also United Mine Workers of Am. Health & Retirement Funds v. Robinson, 455 U.S. 562, 574-75 (1982) ("[F]ormer members and their families may suffer from discrimination in collective-bargaining agreements because the union need not 'affirmatively ... represent [them] or ... take into account their interests in making bona fide economic decisions in behalf of those whom it does represent.") (citations omitted); Rossetto, 128 F.3d at 540-41 (listing cases acknowledging the potential for conflict between the interests of retirees and active employees); Local 134, UAW v. Yard-Man, 716 F.2d 1476, 1484 (6th Cir. 1983) ("While the union may have bargained for and received benefits for retirees, it does not have the same interest in the enforcement of those contractual rights on the behalf of individual retirees that it has in the terms and conditions of employment of active employees."). This potential conflict of interest refutes the Union's argument that it is the legal representative of the retirees and that it should be permitted to represent them without first obtaining their consent.

Moreover, because retirees are not employees, the federal courts uniformly have held that retirees have an independent right to pursue their individual claims against their former employer. See Meza v. General Battery Corp., 908 F.2d at 1270 ("[A]n ex-employee/ex-union member is free to pursue his own claims and make his own settlements with the former employers."); Anderson v. Alpha Portland Indus., 752 F.2d 1293, 1296 (8th Cir. 1985) (en banc) (explaining that cases holding that a union has standing to represent retirees in grievance and arbitration proceedings "do not establish that a union which ... bargain[s] for its retirees becomes their exclusive representative and that the retirees then must proceed through the union.") (emphasis in original); Yard-Man, 716 F.2d at 1484-85 ("Unlike active employees, retirees face no restrictions whatever in seeking fulfillment of contractual benefits directly from their former employer."). To accept Local 503's claim that it should be given the status of the retirees' legal representative would contradict decades of labor jurisprudence.

IV.   **CONCLUSION**

In light of the Second Circuit's express doubts regarding a union's standing to represent retirees, as well as the bulk of authority requiring retirees' consent, all of which the Union concedes, Frontier has sufficiently met its burden to establish a claim that is plausible on its face. Accordingly, the Union's Motion to Dismiss must be denied.

Dated: February 11, 2008

Respectfully submitted,

___/s/ Thomas M. Beck_____
Thomas M. Beck
Tonya M. Osborne
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
202-879-3939 (telephone)
202-626-1700 (facsimile

Wendy C. Butler
Jones Day
222 E. 41st Street
New York, NY  10017
212.326.3939 (telephone)
212.755.7306 (facsimile)

*Attorneys for Plaintiff Frontier Communications of New York, Inc.*

To:   Vincent F. O'Hara
      Marion M. Lim
      3 West 35th Street, 9th Floor
      New York, New York  10001
      (212) 682-2280

      *Attorneys for Defendant
      International Brotherhood of Electrical
      Workers, AFL-CIO, Local Union 503*