

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRONTIER COMMUNICATIONS OF
NEW YORK, INC.,

                Plaintiff,

  -against-

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO, LOCAL
UNION 503,

                Defendant.

---

07-CV-10327 (GEL)
ECF CASE

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiff Frontier Communications of New York, Inc. hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment of the United States District Court for the Southern District of New York (Lynch, J.) entered May 6, 2008, granting Defendant International Brotherhood of Electrical Workers, AFL-CIO, Local Union 503's motion to dismiss this action.

Dated: New York, New York
       June 4, 2008

                                          JONES DAY

                                          By: _____
                                          Wendy C. Butler (WB-2539)
                                          JONES DAY
                                          222 East 41st Street
                                          New York, New York  10017-6702
                                          (212) 326-3939

                                          Attorney for Plaintiff

## SERVICE LIST

Vincent F. O'Hara
Marion M. Lim
HOLM & O'HARA LLP
3 West 35th Street, 9th Floor
New York, New York  10001
(212) 682-2280

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
FRONTIER COMMUNICATIONS OF                                  :
NEW YORK, INC.,                                             :
                                                            :
                            Plaintiff,                      :
                                                            :         07 Civ. 10327 (GEL)
        -v.-                                                :
                                                            :         **OPINION AND ORDER**
                                                            :
INTERNATIONAL BROTHERHOOD OF                                :
ELECTRICAL WORKERS, AFL-CIO,                                :
LOCAL UNION 503,                                            :
                                                            :
                            Defendant.                      :
                                                            :
------------------------------------------------------------x

Wendy C. Butler (Thomas M. Beck, Tonya M.
Osborne, of Counsel), Jones Day, New York, NY,
for plaintiff.

Vincent F. O'Hara (Marion M. Lim, of Counsel),
Holm & O'Hara LLP, New York, NY, for defendant.

GERARD E. LYNCH, District Judge:

   In this action, plaintiff seeks a declaratory judgment that defendant lacks standing to arbitrate a grievance with plaintiff pursuant to an agreement between the two parties, and for an injunction preventing such an arbitration from proceeding. Defendant now moves to dismiss plaintiff's claims for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion will be granted.

## BACKGROUND

   This case concerns a collective bargaining agreement between plaintiff Frontier Communications of New York, Inc. ("Frontier"), a telecommunications company, and defendant International Brotherhood of Electrical Workers, AFL-CIO, Local Union 503 ("Local 503"), the

labor union representing Frontier employees. (Compl. ¶¶ 4-6.) The collective bargaining agreement ("CBA") at issue was effective from February 1, 2004, to January 31, 2007, and provides for the rates of pay, hours of work, and other conditions of employment for Frontier employees. (Compl. ¶ 6; CBA[1] Article 1.)

One condition of employment provided by the CBA is that "for any employee who retires and receives a Defined Services Pension, [Frontier] will contribute toward the basic Health Care coverage (Medical) at the rate of $250 for single and $375 for family coverage." (CBA § 28.3.) In the spring of 2005, Local 503 accused Frontier of violating this provision by unilaterally making changes to retiree medical benefits. (Compl. ¶ 18.) The CBA sets forth a procedure for resolving "[a]ny grievance which may arise between the Union or any employee in the Bargaining Unit and the Company." (CBA § 29.2.) According to this procedure, Local 503 must seek an informal resolution by presenting the grievance to company management, and if that fails, Local 503 may submit the grievance to arbitration. (CBA §§ 29.2, 30.1.) Local 503 presented its grievance regarding retirement benefits to company management, but Frontier denied the grievance on the grounds that Local 503 is an agent only of Frontier employees, that Local 503 was seeking to represent retirees, and that "retirees do not qualify as employees" under the CBA. (Compl. ¶ 21.) Local 503 thereafter filed a demand for arbitration. (Id. ¶ 22.)

Frontier filed suit in this Court to prevent that arbitration. Frontier argues that Local 503 lacks standing to arbitrate the grievance with Frontier, and it seeks a declaratory judgment to that

---

[1] The CBA is Exhibit B to the Declaration of Vincent O'Hara in Support of Defendant IBEW Local 503's Motion to Dismiss, dated January 18, 2008. Because Frontier attached the CBA to its Complaint (see Compl. ¶ 6), the Court may consider the CBA on this motion to dismiss, see Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

2

effect, and an injunction preventing the union from seeking to arbitrate or otherwise pursuing the grievance without the "explicit consent from any and all retirees whose interests it seeks to represent." (Compl. ¶ 32.) Local 503 moves to dismiss the action.

## DISCUSSION

### I.   Motion to Dismiss Standard

A motion to dismiss may be granted for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon such a motion, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds, Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). A complaint may be dismissed only where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007). When deciding a 12(b)(6) motion, the Court must take as true the facts as alleged in plaintiff's complaint. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). All reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).

Here, the parties' dispute involves pure questions of law. Frontier seeks a declaratory judgment that Local 503 is not entitled to compel arbitration with Frontier regarding the retirement benefits in the CBA, and an injunction to prevent it from trying to do so. Whether Frontier is entitled to that relief turns on whether Local 503 would be entitled to compel arbitration with Frontier pursuant to the CBA. If Local 503 would be entitled to compel such arbitration, taking the facts as pleaded by Frontier as true, then Frontier has failed to state a

3

claim, and the motion to dismiss must be granted.

## II. Standing Under The Labor Management Relations Act

Local 503's statutory basis to compel arbitration in federal court is Section 301 of the Labor Management Relations Act ("LMRA"). Section 301(b) provides that a "labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." 29 U.S.C. § 185(b). In such a suit, a district court has jurisdiction to compel arbitration under a collective bargaining agreement. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). In doing so, however, a court's role is limited to determining the "question of arbitrability," meaning the "gateway dispute about whether the parties are bound by a given arbitration clause." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). In determining arbitrability, a court must give effect to the congressional policy in favor of arbitration by granting an order to compel "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S. at 582-83. Any "doubts should be resolved in favor of coverage." Id. at 583.

Frontier concedes that the dispute is "admittedly arbitrable" (Pl. Opp'n 5), but argues that the question of arbitrability may not reached by this Court because Local 503 lacks standing to enforce the arbitration clause. The question of standing is jurisdictional, concerned with "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). It is a requirement of Article III of the Constitution, and in order to satisfy it, a plaintiff must allege (1) a concrete, personal injury in fact (2) that is "fairly traceable to the challenged action of the defendant" and (3) likely to be

4

redressed by the relief sought from the court. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181-82 (2000), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).[2]

Frontier argues that Local 503 lacks standing because it seeks to enforce a provision of the CBA that affects retirees, and that it may not "represent the legal interests of retirees" without their consent. (Pl. Opp'n 5.) The question of whether a union may enforce a provision of a collective bargaining agreement affecting retirees has not been decided in this Circuit. American Federation of Grain Millers, AFL-CIO v. International Multifoods Corp., 116 F.3d 976, 978 n.2 (2d Cir. 1997) ("It is unclear whether a '[u]nion has standing under [a] CBA to assert the rights of individual retirees in a dispute with a former employer.'"), quoting Schweizer Aircraft Corp. v. Local 1752, UAW, 29 F.3d 83, 87 (2d Cir. 1994). Frontier cites several authorities from other circuits in support of the proposition that unions must "obtain retirees' consent before seeking to arbitrate claims on their behalf." (Pl. Opp'n 3, citing Cleveland Elec. Illuminating Co. v. Utility Workers Union, 440 F.3d 809, 817-18 (6th Cir. 2006); Int'l Ass'n of Machinists & Aerospace Workers v. Goodrich Corp., 410 F.3d 204, 206 (5th Cir. 2005); Rossetto v. Pabst Brewing Co., 128 F.3d 538, 540-41 (7th Cir. 1998).) Frontier argues that such a consent requirement "protects retirees from the prospect of claim preclusion" and "protects employers from the prospect of successive redundant claims by unions and retirees." (Pl. Opp'n 3-4.)

---

[2] An organization may, under certain circumstances, have "associational standing" to pursue claims on behalf of its members, even where it does not itself suffer a concrete injury. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). It is unnecessary to address whether Local 503 has such associational standing because Local 503 has standing to sue on behalf of itself under Section 301(b) of the LMRA.

Frontier's arguments are unavailing. First, the question of whether Local 503 has standing to litigate on behalf of retirees need not be reached because Local 503 has standing to litigate on its own behalf. It is "axiomatic" that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party. Highland Capital Management, L.P. v. Schneider, No. 02 Civ. 8098 (PKL), 2008 WL 282769, at *19 (S.D.N.Y. Jan. 31, 2008) (party to contract has standing to sue even though third-party beneficiary also has standing to sue).[3] Where an employer has agreed by contract with a union to provide benefits to retirees, "then under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." United Steelworkers of America, AFL CIO v. Canron, Inc., 580 F.2d 77, 80-81 (3d Cir. 1978). Courts in the Second and Ninth Circuits have reached this same conclusion. See International Brotherhood of Elec. Workers AFL-CIO v. Citizens Telecommunications Co. of California, Inc., No. Civ S-06-0677, 2006 WL 1377102, at *4 (E.D. Cal. May 18, 2006), appeal docketed, No. 06-16189 (9th Cir. Jul. 3, 2006)

---

[3] See also Restatement (Second) of Contracts § 305(1) (1981) ("A promise in a contract creates a duty in the promisor to the promisee to perform the promise even though he also has a similar duty to an intended beneficiary."); Eaton Vance Management v. ForstmannLeff Assoc., LLC, No. 06 Civ. 1510 (WHP), 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) (both a party in "contractual privity" as well as "third-party beneficiary of a contract" have "standing to enforce the terms of the agreement," including an arbitration clause); International Brotherhood of Elec. Workers AFL-CIO v. Citizens Telecommunications Co. of California, Inc., No. Civ S-06-0677, 2006 WL 1377102, at *4 (E.D. Cal. May 18, 2006), appeal docketed, No. 06-16189 (9th Cir. Jul. 3, 2006) ("The fact that the retirees themselves might have an arguably duplicative cause of action against the employer is thus, pursuant to third-party beneficiary law, not determinative of the [union's] right to file suit for [an employer's] alleged breach of bargained for terms affecting retirees."); Doctor's Assoc., Inc. v. Hollingsworth, 949 F. Supp. 77, 83 (D. Conn. 1996) (franchisor has standing to compel arbitration pursuant to a franchise agreement because it is a party to franchise agreement, even though it is not a defendant in the litigation).

("[A]ccepted principles of contract law provide further support for [union] standing" to enforce retirement benefits provision.); Textile Workers of America, AFL CIO, Local 129 v. Columbia Mills, Inc., 471 F. Supp. 527, 531 (N.D.N.Y. 1978) (same).[4] Frontier made contractual promises to Local 503 to pay certain benefits, in exchange for contract provisions desired by Frontier, and Frontier agreed to arbitrate disputes over the meaning of those promises. As a counterparty to the contract, Local 503 has a right to enforce it, and the way to enforce it is through arbitration.

Local 503's interest in enforcement is based not merely on the formality that Local 503 is a party to the contract, but also on the "undeniable" interest unions have "in assuring that negotiated retirement benefits are in fact paid and administered in accordance with the terms and intent of their contracts." Allied Chemical and Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 176 n.17 (1971). Unions are empowered by the LMRA to negotiate retiree benefits on behalf of their workers. "To be sure, the future retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining." Id. at 180. To say that a union may negotiate a term but is powerless to enforce it is to severely undermine one of the core reasons workers elect to organize in the first place. A "union's efforts in ensuring employer compliance with all of the terms of a collective bargaining agreement are a significant consideration for the active employees when choosing to retain the union as their exclusive bargaining representative."

---

[4] In addition, the Ninth Circuit found that a dispute involving former members of a union bargaining unit was arbitrable under a collective bargaining agreement without even considering whether the union had standing to arbitrate those claims. United Food & Commercial Workers Int'l Union, AFL-CIO v. Alpha Beta Co., 736 F.2d 1371, 1375 (9th Cir. 1984). That the Court did not address the standing issue suggests it did not view it as a colorable objection, since the Court would have been obliged to rule on such a jurisdictional issue sua sponte if it had had any merit.

7

UAW v. Yard-Man, Inc., 716 F.2d 1476, 1486 (6th Cir. 1983). As the party that bargained for the CBA on its members' behalf, Local 503 has significant institutional interests in seeing that the terms of that agreement are enforced.

Second, Local 503 has standing for the independent reason that it is specifically empowered by Section 301(b) of the LMRA to sue "in behalf of the employees whom it represents." 29 U.S.C. § 185(b). At the time that Frontier allegedly made unilateral changes to the retirement benefits provision, in the spring of 2005, the CBA was still in force. Consequently, the changes to that provision affected not just those who were already retired, but also those Frontier employees who would be eligible to retire before the expiration of the CBA in January 2007. For such employees, Frontier's alleged decision was an anticipatory breach of its obligations, and gave them a current, concrete dispute with the company. Because Section 301(b) gives Local 503 the power to sue on the employees' behalf, the union has standing to compel arbitration to resolve that dispute.

Third, the authorities from other circuits relied upon by Frontier are not persuasive. In Goodrich, the Fifth Circuit's entire discussion of whether unions lack standing to sue without retiree consent is dicta because, in fact, the union in that case had obtained consent from the retirees. 410 F.3d at 212 ("[W]e need not here ultimately resolve whether Canron should be followed . . . [because] the Union has standing . . . to represent the fifty-two retirees whose express authorizations of the Union to do so were filed with the district court below."). In Rossetto, the collective bargaining agreement at issue had already expired by the time the employer made its unilateral change to the retiree benefits. 128 F.3d at 538 (agreement expired June 1, 1995, but change was not made until September 1, 1996). As a result, the only people

affected by the change were retirees, not current employees, eliminating the union's standing to sue on behalf of current employees. While this difference alone would not lead this Court to deny standing – because a union may still sue on its own behalf – it does take away one basis for standing, and makes Rossetto less persuasive here.

Moreover, both Goodrich and Rossetto misapply the Supreme Court's holding in Pittsburgh Plate Glass. As discussed above, Pittsburgh Plate Glass acknowledged the "undeniable" interest unions have "in assuring that negotiated retirement benefits are in fact paid and administered in accordance with the terms and intent of their contracts." 404 U.S. at 176 n.17. However, the issue before the Court was whether a company's mid-term modification to the "benefits of already retired employees" was an "unfair labor practice" under the LMRA. 404 U.S. at 159-60. The Court concluded that it was not. Such modifications would be an unfair labor practice only if such benefits were a mandatory subjects of collective bargaining, that is, a term on which an employer has an affirmative obligation to bargain collectively with the union. Id. at 164. Since only the terms of employment of "employees" are mandatory, id., and retirees are not "employees" as defined in the Act, id. at 167-72, such modification is not an unfair labor practice, id. at 188.[5]

Goodrich and Rossetto interpreted this to mean that a union lacked standing to sue to enforce a collective bargaining agreement's provision for retirement benefits. Section 301(b) of

---

[5] Note that Pittsburgh Plate Glass considered only whether the "benefits of already retired employees" are a mandatory subject of collective bargaining, and not the future retirement benefits of active employees. Indeed, the Court explicitly suggests that the latter *are* a mandatory subject of collective bargaining. See 404 U.S. at 180 ("To be sure, the future retirement benefits of active workers are part and parcel of their overall compensation and hence a well-established statutory subject of bargaining.").

9

the LMRA grants a union power to sue only "as an entity and in behalf of the employees whom it represents." 29 U.S.C. § 185(b). If the term "employees" does not encompass retirees for purposes of collective bargaining, then it also cannot encompass them for purposes of standing to sue in federal court. See Goodrich, 410 F.3d at 211-12; Rossetto, 128 F.3d at 539-40.

While this statement about the definition of "employees" in Section 301(b) may be correct,[6] it is not relevant to the issue here. As discussed above, a union's standing to sue to enforce retirement benefits provided by a collective bargaining agreement arises not from its power to sue on behalf of retirees, but rather from its power to sue on its own behalf as a party to the agreement, and on behalf of its current employees, as future recipients of the bargained-for benefits. Section 301(b) clearly provides authority for both types of suits.

Indeed, the reasoning of Pittsburgh Plate Glass suggests that the Supreme Court itself recognized a union's power to bring such suits. In describing why a union's "undeniable" interest in enforcing retirement benefit provisions does not need vindication through unfair labor practice protections, the Court observed that "Congress has specifically established a remedy for breaches of collective-bargaining agreements in [Section] 301 of the [LMRA]." 404 U.S. at 176 n.17. Since Section 301 sets forth only a union's power to sue an employer, the Court clearly

---

[6] Though the question need not be resolved here, it is also not certain that the definition of "employees" for purposes of collective bargaining, under Section 8(a)(5) of the LMRA, 29 U.S.C. § 158(a)(5), is the same as its definition for purposes of standing to sue, under Section 301(b). As the Court acknowledged in Pittsburgh Plate Glass, in other sections of the LMRA, such as Section 302(c)(5), 29 U.S.C. § 186(c)(5), the definition of "employees" does include retirees, and indeed, for purposes similar to considering retirees as "employees" here. "[T]here is no anomaly in the conclusion that retired workers are 'employees' within [Section] 302(c)(5) entitled to the benefits negotiated while they were active employees, but are not 'employees' whose ongoing benefits are embraced by the bargaining obligation of [Section] 8(a)(5)." 404 U.S. at 170.

10

did not intend its holding to mean that unions lack standing to undertake suits regarding such benefits.[7]

Cleveland Elec. Illuminating, the third case relied upon by plaintiffs, does not rely on Pittsburgh Plate Glass. It, too, however, is unpersuasive. In that case, the Sixth Circuit agreed that "a union has standing to arbitrate the meaning of a collective bargaining agreement that grants rights to third parties simply by virtue of the fact that the union is a party to the contract," but went on to hold that a union cannot do so without obtaining "the assent of the retirees before purporting to represent them at arbitration." 440 F.3d at 817, citing Rossetto, 128 F.3d at 541. The Court concluded that without consent there is the "danger[]" that a union's legal action could cause retirees to "lose their rights to pursue their claims directly" through the operation of res judicata. 440 F.3d at 817, citing Rossetto, 128 F.3d at 540.

This reasoning is flawed for a number of reasons. First, there is no textual basis in the LMRA or elsewhere for such a consent requirement; the consent rule is simply made up by the Sixth Circuit to remedy a perceived unfairness. Second, even if retirees could be precluded via res judicata, this "danger" to retirees is no different than the danger faced by employees under the current statutory scheme, who also risk losing their right to pursue their claims directly. See Meza v. General Battery Corp., 908 F.2d 1262, 1268 (5th Cir. 1990) ("Federal courts have long recognized that individual members of labor unions . . . can be bound by judgments in suits

---

[7] The courts that have upheld a union's standing to enforce a collective bargaining agreement on its own behalf have therefore found the unfair labor practice holding of Pittsburgh Plate Glass not contrary to their analysis. Canron, 580 F.2d at 80 (Pittsburgh Plate Glass "is inapposite in the instant case."); Citizens Telecommunications, 2006 WL 1377102 at *3 ("[T]he question in this case was not actually decided by the Supreme Court" in Pittsburgh Plate Glass.); Columbia Mills, 471 F. Supp. at 530-31 ("The issue presented in this case is different than that considered" in Pittsburgh Plate Glass.).

brought by the union."). While employees have, in a sense, consented to the union pursuing claims on their behalf by choosing the union as their bargaining representative, the same is true for retirees who, before they retired, chose the union to be their representative in negotiating the very contract provision the union now seeks to enforce.

Third, for reasons set forth persuasively in Meza, it is unclear that retirees would be precluded from pursuing their claims directly.[8] Res judicata bars subsequent litigation by parties to an action, and applies to non-parties only in a narrow set of circumstances. These circumstances are: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were "adequately represented" by a party to the original suit. Meza, 908 F.2d at 1266; accord, Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 346 (2d Cir. 1995). Clearly, the first two circumstances do not apply to retirees. See Meza, 908 F.2d at 1266. Thus, whether retirees would be bound by a prior union action depends on whether their interests were "adequately represented" by the union. Meza held a union was not an "adequate" representative of former employees in its enforcement of a collective bargaining agreement against their former employer. Id. at 1270. If the reasoning of Meza proves persuasive, retirees would not be precluded from litigating by Local 503's attempts to enforce the terms of the CBA.[9] They would

---

[8] Cleveland Elec. Illuminating prominently cites Meza, but fails to address the fact that Meza undermines the core rationale for its holding.

[9] Although the language suggests some tension, there is no legal contradiction in holding, on the one hand, that a union has standing to enforce terms of a collective bargaining agreement affecting retirees, while on the other hand, that a union is not an "adequate" representative of such retirees' interests. The purposes and legal standards of each inquiry are distinct, as Meza expressly recognized: "Whether a union has standing to represent past members is a different question from whether the union adequately represents them." 908 F.2d at 1270.

be precluded only if courts were satisfied that the representation of such retirees' interests had been "adequate." Accordingly, there is little basis for concern that allowing the union to enforce retirees' rights without their consent would prejudice retirees.

Cleveland Elec. Illuminating also raises the prospect that allowing a union to proceed without retirees' consent could expose an employer to numerous duplicative claims by retirees. 440 F.3d at 817. This alone is insufficient grounds to deny a union standing when the LMRA otherwise allows it. In any event, the potential for multiple similar lawsuits is not unique to collective bargaining, but is present whenever a defendant is subject to claims from multiple plaintiffs arising out of a single course of conduct. To the extent the concern about duplicative lawsuits is legitimate, Meza suggests means by which employers can avoid it, including (1) expressly authorizing the union to represent retirees as a term of the collective bargaining agreement; (2) petitioning the court to join retirees as individual parties to a suit; or (3) petitioning the court to certify a class of retirees so that the individual claims could be resolved in a single litigation. See 908 F.2d at 1271 n.9. Any of these mechanisms would allow for the resolution of all claims through a single lawsuit.

### III.   "Standing" Under The CBA

The parties engage in extended argument as to whether the term "employees," as used in the CBA, includes retirees. (See Def. Mem. 5-7; Pl. Opp'n 6-10.) Frontier appears to argue that if "employees" does not include retirees, then the arbitration provision may not be invoked for the benefit of retirees because the procedure only applies to a "grievance which may arise between the Union or any *employee* in the Bargaining Unit and the Company." (CBA § 29.2) (emphasis added). However, as discussed above, Local 503's grievance is, in fact, asserted on

behalf of Local 503 and current employees, and thus is a grievance arising between the Union and Frontier, and between Frontier employees and Frontier.

In any event, the question of who has rights under the arbitration provision is not one of standing, but of arbitrability. "[W]hether [an] arbitration provision inures to the benefit of [a party] and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute" between them, "presents a straightforward issue of contract interpretation," not "standing." Perry v. Thomas, 482 U.S. 483, 492 (1987). In resolving this argument, the Court would be bound to find arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S. at 582-83. Otherwise, such "'procedural' questions . . . should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). Since Frontier concedes the arbitrability of the grievance (see Pl. Opp'n 5), and seeks a declaratory judgment only with respect to Local 503's standing to arbitrate its grievance, there appears to be no real issue under the CBA.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted, and plaintiff's complaint is dismissed.

SO ORDERED.

Dated: New York, New York
       May 6, 2008

                                                                   _____
                                                                   GERARD E. LYNCH
                                                                   United States District Judge

14

behalf of Local 503 and current employees, and thus is a grievance arising between the Union and Frontier, and between Frontier employees and Frontier.

In any event, the question of who has rights under the arbitration provision is not one of standing, but of arbitrability. "[W]hether [an] arbitration provision inures to the benefit of [a party] and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute" between them, "presents a straightforward issue of contract interpretation," not "standing." Perry v. Thomas, 482 U.S. 483, 492 (1987). In resolving this argument, the Court would be bound to find arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation, 363 U.S. at 582-83. Otherwise, such "'procedural' questions . . . should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). Since Frontier concedes the arbitrability of the grievance (see Pl. Opp'n 5), and seeks a declaratory judgment only with respect to Local 503's standing to arbitrate its grievance, there appears to be no real issue under the CBA.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted, and plaintiff's complaint is dismissed.

SO ORDERED.

Dated: New York, New York
       May 6, 2008

_____
GERARD E. LYNCH
United States District Judge